**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| JENNIFER MARIE R., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FRANK J. BISIGNANO,[1] | : | No. 22-4203 |
| Commissioner of Social Security, | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**                                                                      **June 2, 2026**
**U.S. MAGISTRATE JUDGE**

Plaintiff Jennifer Marie R. appeals the Commissioner of Social Security's final decision

to deny her claim for benefits. In particular, she contends that the unfavorable decision

misidentified her severe impairment at step two, misstated or omitted material evidence from the

analysis at step four, and failed to consult a medical expert at step three. The Commissioner

disagrees, arguing that the decision to deny benefits comported with the governing regulations

and is supported by substantial evidence. For the reasons that follow, I agree with the

Commissioner, and Plaintiff's request for review is denied.

**I.      BACKGROUND**

**A.  Factual and Procedural History.**

Plaintiff was born in February 1982, meaning she was a younger individual at the time of

her alleged onset date. *See* R. 64. She graduated high school and attended some college before

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

starting to work in a retail capacity at a local pharmacy. *See* R. 39, 42. She worked at the

pharmacy for over twenty years until she was terminated in early January 2019. *See* R. 43.

According to Plaintiff, she was fired because she called out sick too frequently due to her joint

pain and skin rashes. *Id.*

Almost a year and a half later, on May 13, 2020, Plaintiff applied for disability insurance

benefits ("DIB"). *See* R. 64. In her application, she alleged that she was disabled based on

dermatomyositis and migraines. *See id.* Her disability claim was initially denied August 3, 2020,

*see* R. 90–93, and again on reconsideration on December 10, 2020, *see* R. 101–03. Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 104–05, and a

telephone hearing was held on April 30, 2021, *see* R. 30–63 (hearing transcript). After this

hearing, on June 16, 2021, the ALJ issued a written decision denying Plaintiff's claim. *See* R.

15–25. The Appeals Council denied Plaintiff's subsequent request for review, meaning the ALJ's

written opinion became the final decision of the Commissioner. *See* R. 1–3. Plaintiff now timely

appeals.[2]

### B.  ALJ's Decision.

The ALJ evaluated Plaintiff's claim using the five-step sequential analysis set forth in the

Social Security regulations.[3] Beginning at step one, the ALJ determined that Plaintiff did not

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 2, 5.

[3] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

engage in substantial gainful activity since the amended alleged onset date—January 1, 2020.[4]
*See* R. 17.

At step two, the ALJ found that Plaintiff suffered from two severe impairments: a connective tissue disease and migraines. *See* R. 17–19. Her right hip disorder, sinus disorder, and mental impairment were deemed non-severe because they have not caused more than minimal limitations on her ability to work. *Id.* Specifically, they either did not last for a continuous twelve-month period, responded to medications, did not require significant treatment, or did not result in continuous functional limitations. *Id.*

Moving on to step three, the ALJ concluded that none of Plaintiff's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. *See* R. 19. Specifically, the ALJ compared Plaintiff's impairments to the impairments included in Listing 14.05 (polymyositis and dermatomyositis). *Id.*

Before reaching step four, the ALJ considered Plaintiff's residual functional capacity ("RFC").[5] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Plaintiff has the RFC to perform "light work,"[6] subject to the following restrictions:

---

[4] The ALJ also noted that Plaintiff's date last insured was December 31, 2023. *See* R. 17. To be eligible for disability insurance benefits, the claimant "must establish that their disabling condition(s) began on or before the last day they were insured for disability purposes." 2 SOC. SEC. DISABILITY CLAIMS: PRAC. & PROCEDURE § 22:251 (2d ed. Oct. 2022 update).

[5] Residual functional capacity is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[6] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* More specifically, the Social Security Administration has instructed that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

> [C]laimant can stand and/or walk four hours total in an eight-hour
> workday; she can occasionally balance, stoop, kneel, crouch,
> crawl, and climb ramps and stairs; she can never climb ladders,
> ropes, or scaffolds; she must avoid all exposure to extreme cold,
> extreme heat, wetness, and humidity; and she must avoid more
> than occasional exposure to concentrated fumes, odors, and gasses.

*See* R. 19–23.

At step four, the ALJ found that given Plaintiff's RFC, she could not perform her past relevant work as a sales clerk. *See* R. 23.

The ALJ then proceeded to step five and identified multiple jobs in the national economy that Plaintiff could perform, including office helper, survey worker, and mail sorter. *See* R. 24–25.

As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.[7] *See* R. 25.

## II.    STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v.*

---

[7] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

*Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

## III.    DISCUSSION

Plaintiff appeals the ALJ's unfavorable decision on three grounds. *See* Doc. No. 18-4, at 4–30. First, she claims that the ALJ failed to identify her severe impairment of dermatomyositis at step two. *Id.* at 4–17. Second, she alleges that during the RFC stage, the ALJ misstated or omitted relevant evidence to such an extent that the ultimate decision cannot be said to rest on substantial evidence. *Id.* at 17–27. Third, she argues that the ALJ erred by not consulting a medical expert at step three. *Id.* at 27–30. The Commissioner responds that the ALJ's decision was reasonable and supported by substantial evidence. *See* Doc. No. 20, at 4–15. After careful review, I agree with the Commissioner that none of Plaintiff's claims justify relief.

### A.  The ALJ properly considered Plaintiff's dermatomyositis at step two and in the remaining analysis.

In her initial claim, Plaintiff takes issue with the ALJ's use, at step two, of the generic term "connective tissue disease," instead of her formal diagnosis of "dermatomyositis." *See* Doc. No. 18-4, at 4–17. She argues that this misstep reveals a fundamental misunderstanding of her condition that caused the ALJ to not properly credit her subjective complaints or evaluate the medical opinion evidence at later steps in the analysis.[8] *Id.* For these reasons, Plaintiff urges the Court to grant her request for remand. *Id.*

---

[8] Plaintiff's argument is, at times, difficult to follow. She begins with a discussion of step two caselaw and spends many pages discussing why it was incorrect for the ALJ at step two to refer to her dermatomyositis as "a connective

At step two, the ALJ considered whether the Plaintiff had any severe impairments, as that term is defined in the regulations. *See* R. 17–19. Relevant here, the ALJ concluded that Plaintiff's "connective tissue disease" was severe. *Id.* The fact that the ALJ did not reference dermatomyositis at this step is the crux of Plaintiff's first claim.

To be sure, it is perplexing as to why the ALJ chose to refer to Plaintiff's dermatomyositis as a connective tissue disease and not by its formal name, especially considering that the medical records *uniformly* use the term dermatomyositis. However, it was not incorrect. Dermatomyositis is considered a connective tissue disease. *See Polymyositis and Dermatomyositis*, CEDARS SINAI, https://www.cedars-sinai.org/health-library/diseases-and-conditions/p/polymyositis-and-dermatomyositis.html (last visited May 4, 2026). Accordingly, the ALJ did not err at step two.

This conclusion is fatal to the remainder of Plaintiff's claim: the subsequent alleged errors were all ascribed to the ALJ incorrectly identifying her severe impairment at step two. Since there was no step two error, it could not have logically caused the ALJ to err later in the analysis. Nevertheless, even if it were error (which it was not), Plaintiff has not shown that it was harmful.

---

tissue disease." *See* Doc. No. 18-4, at 4–7. However, it appears that she is alleging that the harmfulness of this mischaracterization occurred not at step two but later in the analysis. *See id.* at 7–17.

To the extent that Plaintiff is suggesting that the ALJ completely omitted her dermatomyositis from the list of her severe impairments at step two (rather than just use a different term for it), I disagree. It is patently evident that the ALJ was referencing dermatomyositis when she mentioned Plaintiff's "connective tissue disease": first, the ALJ cited medical records related to Plaintiff's treatment of dermatomyositis, *see* R. 21, and second, as the Plaintiff concedes, dermatomyositis falls under the "umbrella" of connective tissue diseases, *see* Doc. No. 18-4, at 6. Her insistence, nevertheless, that dermatomyositis cannot be considered a connective tissue disease (and confusingly that there is no such thing) is unconvincing.

For instance, Plaintiff argues that the alleged misunderstanding of her dermatomyositis, as evidenced at step two, caused the ALJ to improperly reject her subjective complaints of pain.[9] *See* Doc. No. 18-4, at 8–13. However, the entirety of her argument is essentially a block quote of her hearing testimony. *Id.* at 10–13. She fails to meaningfully engage with the ALJ's analysis on this point,[10] and therefore she has not satisfied her burden of showing that the ALJ's alleged error was harmful.

Likewise, Plaintiff's argument that the alleged misunderstanding of her dermatomyositis impacted the ALJ's assessment of the medical opinions is unavailing.[11] Plaintiff contends that the ALJ failed to adequately explain why she found the initial state agency reviewer's opinion

---

[9] When deciding a claim for disability, the ALJ must consider a claimant's description of her pain and evaluate the extent to which that description is reasonably consistent with the objective medical and other record evidence. 20 C.F.R. § 404.1529(a). Although a description of one's pain, without more, is not enough to establish disability, such allegations combined with objective medical evidence can lead to a favorable disability determination. *See id.* To assess whether a claimant's pain is disabling, the ALJ must (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain; and if so, (2) then evaluate the intensity, persistence, and limiting effects of that pain. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). At the second step of the analysis, the ALJ will consider not just the record medical evidence but also the claimant's daily activities; the location, duration, frequency, and intensity of the pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of pain medications; treatments, or other measures, taken for pain relief; and any other factors that concern the functional limitations caused by the pain. *See id.* at *7 (citing to 20 C.F.R. § 404.1529(c)(3)).

Here, the ALJ engaged in this analysis, determining that Plaintiff has a medically determinable impairment that could cause her symptoms, but that her complaints as to intensity, persistence, and limiting effects were "not entirely consistent" with the record. *See* R. 21. Although the Plaintiff correctly points out that this is boilerplate language found in almost every ALJ opinion, *see* Doc. No. 18-4, at 9, this does not mean that—on its own—it is error. Rather, the ALJ must support this conclusion with an adequate explanation demonstrating that it is supported by substantial evidence.

[10] Indeed, the ALJ thoroughly summarized Plaintiff's hearing testimony regarding the symptoms caused by her dermatomyositis, including almost the entire section reproduced in Plaintiff's brief. *Compare* R. 20–21, *with* Doc. No. 18-4, at 10–13. Plaintiff therefore cannot argue that the ALJ failed to consider this evidence. Instead, it appears that she is asking the Court to reweigh the evidence in her favor. This is not permitted. *Chandler*, 667 F.3d at 359.

[11] Before diving into this argument, Plaintiff briefly mentions that none of her treating sources doubted the reported severity of her symptoms. *See* Doc. No. 18-4, at 13–14. She also states that although some of the medical records indicate that Plaintiff denied joint pain, those same notes revealed that she had muscle weakness. *Id.* These comments seem to be included before the substance of her argument (that the ALJ's analysis of the medical records was flawed) to suggest that there was no other evidence to contradict or undermine her subjective allegations of her symptoms, thereby underscoring the importance of the alleged error.

persuasive as is required by the regulations.[12] *See* Doc. No. 18-4, at 13–16. But, again, Plaintiff

has not demonstrated that the ALJ's arguably deficient explanation was harmful. There is

absolutely no discussion from Plaintiff connecting the ALJ's alleged error with any specific

harm that she suffered. Notably, she does not allege that the opinion was inconsistent with her

medical records, or that the ALJ should have found another opinion more persuasive (as the state

agency reviewing opinions were the only ones in the record). She merely restates the ALJ's

analysis and the regulatory requirements for considering medical opinion evidence.[13] This is not

enough to obtain remand.

Perhaps in an attempt to avoid this conclusion, in the following subsection, the Plaintiff

argues that the RFC determination does not properly reflect "any" of her subjective complaints.

*Id.* at 16–17. This argument, however, does not save her claim. Although she insists that none of

---

[12] The RFC determination is ultimately an administrative, not medical, decision that is reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2). But to reach this decision the ALJ must first evaluate and weigh the medical opinions in the record. *See* SSR 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996). As part of this analysis, the governing social security regulations require ALJs to evaluate the persuasiveness of all medical opinions contained in the record. *See* 20 C.F.R. § 404.1520c(a). The regulations advise that when conducting this analysis, the ALJ should consider, among other factors, the supportability of the opinion, the consistency of the opinion, the medical source's relationship with the claimant (e.g., the length, frequency, purpose, and extent of the relationship), and the medical source's specialization. *See id.* § 404.1520c(c). The most important of these factors are supportability and consistency. *See id.* § 404.1520c(b)(2).

[13] For context, the ALJ considered the only two medical opinions in the administrative record: one from the state-agency reviewer at the initial determination level, and one from a different state agency reviewer on reconsideration. *See* R. 23. The ALJ explained that:

> The Initial ["Disability Determination Services," or "DDS"] physical assessment of Gurcharan Singh, MD alleges that the claimant is able to perform a narrow light range of work with some postural restrictions and no environmental limitations. I find that this DDS assessment is persuasive. However, other evidence shows that she is more limited, with regard to postural and environmental restrictions.

> Meanwhile, the DDS Reconsideration physical assessment of Minda Uy-Barreta Bermudez, MD contends that the claimant is able to perform a narrow light range of work, with the ability to stand six hours in an eight-hour workday. I find that this Reconsideration assessment is less persuasive than that of Dr. Singh.

*Id.* (internal citations omitted).

8

her subjective complaints were accommodated for in the RFC, she only references two limitations that should have been, but were not, included—a restriction on her ability to reach and handle, and a restriction that she never be exposed to concentrated fumes. *Id.*

With respect to reaching and handling, Plaintiff contends that her testimony and treatment records suggested that she had difficulty in these areas, yet the ALJ did not include a corresponding limitation in the RFC. *Id.* Critically, though, Plaintiff does not connect this lack of limitation to the jobs that the ALJ found she could perform. In other words, she has not argued to what extent she is limited in this realm (e.g., never can reach and handle, able to do so occasionally, etc.), and whether such a limitation would have precluded her from performing those jobs. Instead, she quotes a general Social Security Ruling that only surmises that a *significant* limitation of reaching or handling would eliminate a large number of jobs. *Id.* (citing to Social Security Ruling 85-15, *Titles II and XVI: Capability to Do Other Work—the Medical-Vocational Rules as a Framework for Evaluating Solely Non-exertional Impairments*, 1985 WL 56857 (Jan. 1, 1985)). This is simply too speculative to support a remand.[14]

Plaintiff's argument that the ALJ should have included a restriction that she never be exposed to fumes is similarly unsuccessful. *Id.* Notably, the ALJ limited Plaintiff to no more than

---

[14] As mentioned above, Plaintiff has not suggested to what extent she was limited in terms of her ability to reach and handle nor has she shown that such a limitation would preclude her from performing the jobs identified by the ALJ. For these reasons, I have found that she has not satisfied her burden of establishing that remand is required.

However, I recognize that the vocational expert testified at the administrative hearing that a restriction to only occasional reaching and handling would eliminate most jobs at the light and sedentary levels. *See* R. 60. Because Plaintiff has not referenced, let alone discussed, this testimony, any argument based on it has been waived. *See Higgins v. Bayada Home Health Care, Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (reiterating that a litigant forfeits any arguments that are "not squarely argued" (quoting *John Wyeth & Bro. Ltd. V. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997))); *see also Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442F.3d 812, 820 n.8 ("Judges are not like pigs, hunting for truffles buried in the record." (internal quotation marks omitted) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002))). Nevertheless, even if I were to consider an argument based on this testimony, Plaintiff has not demonstrated that the ALJ should have restricted her to occasional reaching or handling. Notably, there was no opinion evidence suggesting as much. Therefore, even if Plaintiff had pointed to this testimony, the undersigned's decision would remain the same.

occasional exposure to concentrated fumes, odors, and gases. *See* R. 19. At the hearing, the vocational expert testified that the jobs listed were located in "an office environment" that would not typically "involve concentrated chemicals." *See* R. 58. Though the vocational expert did not outright state that the jobs would be available even if Plaintiff were further limited to no such exposure (rather than occasional), she implied as much. *See* R. 58. Therefore, this argument too fails.

Accordingly, Plaintiff's first claim is denied.

### B.  The ALJ's RFC analysis is supported by substantial evidence.

Next, Plaintiff alleges that the ALJ's treatment of the evidence at the RFC stage is riddled with so many errors that the resulting decision is not supported by substantial evidence. *See* Doc. No. 18-4, at 17–27. In particular, she identifies seven statements from the ALJ's RFC analysis that she argues were either incorrect, improperly taken out of context, or not an appropriate area of consideration. *Id.* Taken together, she argues that they render the ALJ's decision unsupported by substantial evidence. *Id.*

Like the rest of the decision, the ALJ's RFC determination must be supported by "substantial evidence." *See Biestek*, 139 S. Ct. at 1152 (2019). To ensure that this standard has been met, reviewing courts look to the ALJ's accompanying explanation for confirmation. Therefore, the ALJ's explanation must be "clear and satisfactory" and contain enough detail to permit meaningful judicial review *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)); *Burnett*, 220 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is actually supported by substantial evidence. *See Cotter*, 642 F.2d at 705.

Relevant here, an ALJ's decision is not supported by substantial evidence when it relies on mistakes of fact. *See, e.g.*, *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) ("This mistake, and others like it, indicate that the ALJ's decision to discredit Dr. Grem was not supported by substantial evidence.").[15] Similarly, ALJs are not permitted to selectively address the evidence that supports their opinion and ignore conflicting evidence that supports an opposite conclusion. *See, e.g.*, *Hammond v. O'Malley*, 735 F. Supp. 3d 567, 583 (E.D. Pa. 2024) (Sitarski, M.J.) (collecting cases).[16] While the ALJ may certainly weigh the evidence and choose what to credit, she cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper and confirm that her decision is supported by substantial evidence. *Cotter*, 642 F.2d at 706–07.

Here, as the Plaintiff points out, the ALJ's review of the medical records and explanation for her RFC determination is not perfect. However, it is sufficient—she adequately explains her reasoning, and upon review, I am able to confirm that it is supported by substantial evidence. This is all that is required.

Plaintiff's various arguments to the contrary are ultimately unconvincing. In large part, the Plaintiff attacks the ALJ's analysis on the ground that the discussion of certain treatment notes was improperly selective, highlighting findings that were helpful to the ALJ's conclusion while ignoring conflicting evidence. *See* Doc. No. 18-4, at 19–24. For example, at point three, Plaintiff

---

[15] *See also Gleason v. Saul*, No. 19-3713, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) (Lloret, M.J.) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision.").

[16] *See also Smith v. Berryhill*, No. 17-2661, 2018 WL 7048069, at *9 (E.D. Pa. Nov. 27, 2018) (Hey, M.J.) ("[A]n ALJ is not permitted to 'cherry-pick' or ignore medical assessments that run counter to her finding." (cleaned up) (quoting *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011))).

takes issue with the ALJ's summary of a letter her current dermatologist, Dr. Victoria P. Werth, prepared for her other treatment providers following a January 2020 appointment. *Id.* at 19–20. Notably, the ALJ correctly quoted from the letter that Plaintiff had "some muscle symptoms, distal arms and legs, shortness of breath with normal PFTs, fatigue, some swallowing issues, but negative swallow test," and therefore, Dr. Werth ordered "a workup (including an MRI of the biceps, upper arm)" and began "topical treatment of the skin 'for now.'" *See* R. 22 (quoting R. 320). Yet Plaintiff complains that the ALJ did not also include the entire interim history report,[17] physical exam results,[18] or the reference to a need to increase treatment. *See* Doc. No. 18-4, at 20.

But such detail is not required. "Once an ALJ 'articulates at some minimum level her analysis of a particular line of evidence,' then she is not required to provide'[a] written evaluation of every piece of [that] evidence." *See Edinger v. Saul*, 432 F. Supp. 3d 516, 529 (E.D. Pa. 2020) (Lloret, M.J.) (first alteration in original) (quoting *Phillips v. Barnhart*, 91 F. App'x 775, 780 m.7 (3d Cir. 2004)). And by no means was the quoted excerpt solely supportive of the ALJ's decision to the exclusion of contradictory evidence. Rather, it was from the summary section of the letter, thereby addressing the previously noted positive and negative findings. *See* R. 320. Indeed, the ALJ specifically acknowledged the Plaintiff's "muscle symptoms" that were affecting her arms and legs, along with her fatigue, shortness of breath and

---

[17] The interim history recitation indicated that Plaintiff's skin symptoms had worsened after she stopped medication, that she has pain in her hands and some pain in her elbows and hips, that she had hair loss with prior medication, and that she gets numb in her back when she lies down. *See* R. 319.

[18] The physical exam results indicated that Plaintiff had erythema on her face involving the "nasolabial fold, fold, posterior to ears, v of neck, upper back, gottrons, nailfold telangiectasias, mild holster sign, [and] mechanics hands." *See* R. 319. It should be noted that elsewhere in the ALJ's opinion, she acknowledged the presence of erythema on Plaintiff's face. *See* R. 22 (describing findings from June 2020 visit); *id.* (describing findings from December 2020 visit).

swallowing issues. *See* R. 22. The fact that the ALJ did not quote the entire letter was not error.[19] To the extent the Plaintiff is inviting the Court to reweigh Dr. Werth's letter, such reconsideration is not allowed on appeal. *Chandler*, 667 F.3d at 359.

Relatedly, the Plaintiff repeatedly alleges that the ALJ relied on a mistaken understanding of the record. *See* Doc. No. 18-4, at 18–21, 23–24. But many of these alleged mistakes are, in fact, not mistakes at all. Take Plaintiff's first point criticizing the ALJ's conclusion that the record was "unclear" as to whether Plaintiff's eligibility for unemployment compensation ended before or after her amended alleged onset date. *See id.* at 18. Plaintiff suggests that the record shows that her last payment for unemployment compensation was in the third quarter of 2019 before the alleged onset date of January 2020. *Id.* (citing to R. 155). However, the record is missing documentation from the first quarter of 2020: it only notes that she received money in the second and third quarters of 2019, and no money in the second quarter of 2020. *See* R. 155. Without any documentation as to what was or was not paid in the first quarter of 2020, it was reasonable for the ALJ to comment that the record was unclear on this point.

Another example is Plaintiff's argument, at point two, that it was "misleading" for the ALJ to comment that Plaintiff had not required any rheumatology treatment. *See* Doc. No. 18-4,

---

[19] Beyond this, at point four, Plaintiff challenges the ALJ's discussion of her medical records from a March 2020 dermatologist visit. There, the Plaintiff argues the ALJ erred because she again omitted any reference to the interim history or physical exam findings from the progress note. *See* Doc. No. 18-4, at 21–22. But the ALJ quoted similar physical exam findings from a June 2020 visit, and her muscle symptoms were described previously in regard to the January 2020 visit. It is obvious from a review of the entire opinion, that the ALJ properly considered this evidence.

Again, at point five, Plaintiff takes issue with the ALJ's decision to report some, but not all, of the findings from a June 2020 telemedicine visit with her dermatologist. *See id.* at 22–23. Specifically, she notes that the ALJ did not reference a single phrase from physical exam findings, nor did the ALJ quote from the interim history section. *Id.* First, with respect to the physical exam findings, the ALJ substantially quoted from the dermatologist's treatment notes. *See* R. 22. And the section that was omitted was a bracketed sentence listing additional findings in a way that it is unclear to the lay reader whether the dermatologist actually made those findings or whether they are no longer present (as they had been during other physical exams). *See* R. 365. Second, the omission of the interim history was not improper for all of the reasons explained above. The ALJ clearly considered this note, and some of the observations from the interim history section were accommodated for elsewhere in the opinion (e.g., muscle symptoms) or unhelpful for Plaintiff (e.g., skin issues resolved).

at 18–19. There are two references to rheumatology in the administrative record: first, Plaintiff's original dermatologist referred her to her current dermatologist, and in doing so, erroneously referred to her as a rheumatologist, and second, she was advised to follow-up with a rheumatologist in January 2019, following a visit with her primary care provider regarding an upper respiratory infection. *Id.* at 19. According to Plaintiff, because this appointment was a week *before* she began treatment with her current dermatologist (who specialized in dermatomyositis), there was no need for her to seek treatment from a rheumatologist. *Id.* However, Plaintiff is mistaken. She had been treating with her current dermatologist since at least October 2018, months before her primary care provider advised her to obtain a second opinion with a rheumatologist. *See* R. 332. And though Plaintiff tries to minimize the advice by noting that the purpose of the visit was to treat an upper respiratory infection, her provider documented that Plaintiff was also frustrated with her current dermatologist, and therefore she was advised to get a second opinion and obtain a rheumatology evaluation. *See* R. 312. As such, it was not incorrect for the ALJ to note that Plaintiff had not required any rheumatology treatment.

Meanwhile, other mistakes that the Plaintiff points to are simply not significant. For instance, at point three, Plaintiff complains that the ALJ attributed a letter from her Penn Medicine dermatologist to providers at Abington Jefferson Health. *See* Doc. No. 18-4, at 19. On balance, this error did not impact the ALJ's decision. Similarly, the fact that the ALJ cited to her annual gynecologist visit when concluding that she had normal physical examination findings was ultimately not harmful. *Id.* at 23–24.

Most concerning, though, is Plaintiff's contention, at point seven, that the ALJ criticized her for not pursuing free or low-cost healthcare, or emergency room care, during the period that

14

she was without health insurance.[20] *See* Doc. No. 18-4, at 25–26. The Third Circuit has found it unreasonable for an ALJ to discredit an uninsured claimant's subjective allegations on the grounds that they did not seek treatment. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003). This is consistent with the social security regulations that recommend that ALJs consider the reasons a claimant may not have sought treatment (such as an inability to afford it or no access to free or low-cost medical services) before concluding that the frequency or extent of treatment obtained by the claimant is not consistent with the degree of their subjective complaints. *See* SSR 16-3P, 2017 WL 5180304, at *9–10 (Oct. 25, 2017).

Here, the ALJ noted that "the record does not contain ongoing treatment with any free or low cost health care providers, or emergency rooms, during the period of time when the claimant was without health insurance." *See* R. 23. Although the Plaintiff has interpreted this statement as a criticism, that is not entirely obvious. Unlike in *Newell*, where the ALJ explicitly stated that the claimant was not credible because she did not seek treatment even though there was record

---

[20] Similarly, at point four, Plaintiff insists that the ALJ's observation that she had not yet undergone an MRI of her bicep, without any consideration as to whether she had insurance coverage for same, was improper. *See* Doc. No. 18-4, at 21. I disagree. First, the ALJ is permitted to make such an observation as it was an accurate reflection of the record. Second, there was no indication that Plaintiff was having insurance trouble at that point. In fact, she confirmed at the administrative hearing that she obtained free health insurance coverage starting around January 2020. *See* R. 40–41.

In addition, Plaintiff maintains that the ALJ improperly made a medical determination when she characterized the evidence in the record as "limited." *See* Doc. No. 18-4, at 24–25. But this is not so. The entirety of the medical records spans a total of one hundred and sixty-eight pages. *See* R. 255–422. Among these are records from approximately six visits with her current dermatologist. *See* R. 327–369, 390–422. There are also notes from a few visits with her primary care doctor, visits with her prior dermatologist prior to her alleged onset date, and a visit with her gynecologist, as well as the report from her MRI. *See* R. 255 –326, 370–388. The ALJ was permitted to consider the limited record of medical treatment as part of her analysis, provided she also considered possible reasons for the lack of treatment, such as insurance issues. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints."). As noted above, the ALJ was aware that the Plaintiff lacked insurance for a period of time before her alleged onset date, but even with that in mind, the record remains limited. Between January 2020 and March 2021, she only saw her treating dermatologist five times, and her primary care provider twice for unrelated issues. Accordingly, the ALJ did not err.

evidence that she could not afford it, *see* 347 F.3d at 547, the ALJ here has not explicitly stated that she was using this gap in treatment against Plaintiff. Instead, it appears that the ALJ was describing that fact that there was a gap in treatment and the reason for it, something that is entirely appropriate and consistent with the regulations.

Moreover, in other cases where the claimant had a gap in treatment due to insurance issues, courts have held that the ALJ's decision to weigh the lack of treatment against them was often harmless. *See, e.g.*, *Allen-Young v. Berryhill*, No. 17-1248, 2019 WL 1220307, at *10 (D. Del. Mar. 15, 2019) ("Even though the ALJ recognized this noncompliance, her assessment of [the claimant's] credibility as to the intensity, persistence, and limiting effects of her symptoms was not significantly influenced by this factor."); *Vega v. Saul*, No. 18-8107, 2020 WL 13600882, at *9 (D.N.J. May 5, 2020) ("Accordingly, the ALJ's reference to no evidence of consistent treatment for physical impairments without acknowledging Plaintiff's testimony that he lacked insurance constitutes, at most, harmless error that does not support remanding this action."). So too here.

Given all of the above, Plaintiff's second claim is denied.[21]

### C.  The ALJ did not abuse her discretion by not obtaining additional medical expert opinion evidence.

Finally, Plaintiff submits that the ALJ abused her discretion by declining her request to obtain a medical expert to advise on the step three analysis. *See* Doc. No. 18-4, at 27–29. Her argument largely rests on her projection that "it would *seem* to be an abuse of discretion"

---

[21] Some of Plaintiff's complaints involve the ALJ's treatment of evidence related to her migraines. *See, e.g.*, Doc. No. 18-4, at 21–24. None of these are successful. Significantly, her briefing lacks any suggestion that the ALJ did not properly accommodate her complaints of migraines into the RFC. Indeed, her briefing is almost solely focused on her dermatomyositis. As such, if any error occurred in discussing her migraines (which I have not found), it was harmless.

because the ALJ was considering a rare condition—dermatomyositis.[22] This, on its own, is not enough. Nor are the cases she cites to support the proposition that ALJs are *required* to seek medical expert opinions when a claimant raises the issue of listing equivalence. *See* Doc. No. 18-4, at 28. Notably, none of them are binding on this Court, and upon further review, I do not find them to be persuasive.[23]

Plaintiff then goes on to argue that without the assistance of a medical expert, the ALJ improperly evaluated Plaintiff's dermatomyositis at step three. *See* Doc. No. 18-4, at 29–30. There, the ALJ compared Plaintiff's symptoms with the criteria enumerated in Listing 14.05 (polymyositis and dermatomyositis). *See* R. 19. Among the ways to satisfy Listing 14.05 is to show that the claimant has repeated manifestations of dermatomyositis, at least two constitutional symptoms or signs, and marked limitations in either activities of daily living,

---

[22] Plaintiff also references a Social Security Ruling for the proposition that the regulations require ALJs to have either a prior administrative or medical finding from the earlier stages of adjudication or medical expert evidence supporting their medical equivalency finding. *See* Doc. No. 18-4, at 28 (citing to SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017)). But the undersigned's review of that Ruling reveals that those evidentiary requirements are only necessary when the ALJ finds in favor of the claimant at step three. *See id.* ("To demonstrate the required support of a finding that an *individual is disabled* based on medical equivalence at step 3, the record must contain one of the following . . . ." (emphasis added)).

[23] Briefly, the cases Plaintiff cites are *Schwartz v. Halter*, 134 F. Supp. 2d 640 (E.D. Pa. 2001), *Maniaci v. Apfel*, 27 F. Supp. 2d 554 (E.D. Pa. 1998), and *Bylsma v. Kijakazi*, No. 20-1377, 2021 WL 4978444 (M.D. Pa. Sept. 16, 2021). In *Schwartz*, the district court relied on a Social Security Ruling that has since been rescinded and replaced. *See* 134 F. Supp. 2d at 659 (discussing SSR 96-6p, 1996 WL 374180 (July 2, 1996), which was replaced by SSR 17-2p, 2017 WL 3928306, at *1 (March 27, 2017)). Meanwhile, the relevant section of the *Maniaci* decision cites to a decades old out-of-circuit decision. *See* 27 F. Supp. 2d at 558 (citing to *Honeysucker v. Bowen*, 649 F. Supp. 1155 (N.D. Ill. 1986)). Lastly, the *Bylsma* decision was addressing a separate question of whether a medical expert was necessary to interpret raw medical data, and in doing so, stated that there are three scenarios that a medical expert is required, including when the ALJ is considering medical equivalence. *See* 2021 WL 4978444, at *11. To support that statement of law, however, *Bylsma* cited to a footnote in the nonprecedential Third Circuit opinion, *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904 (3d Cir. 2014). *See Bylsma*, 2021 WL 4978444, at *11 (citing to *Cooper*, 563 F. App'x at 910 n.8)). There, the panel did in fact list the three scenarios where a medical expert is allegedly required as referenced in *Bylsma*, but the only support for that proposition of law is a citation to a page in the case's joint appendix. *Cooper*, 563 F. App'x at 910 n.8 (citing to "J.A. 117")). Without more, I do not find any of these cases persuasive on the issue of whether there is a requirement for ALJs to obtain a medical expert when considering listing equivalency.

social functioning, or timely completing tasks due to issues with concentration, persistence, or pace. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.05E.

Here, the ALJ concluded that Plaintiff did not meet the listing because she "denied both joint pain and constitutional symptoms on at least two occasions." *See* R. 19 (citing to medical records denying "joint pain, recent fever, chills, drenching night sweats, or unusual weight loss," yet endorsing fatigue). There are two problems with this conclusion: first, simply because constitutional symptoms may have been denied on two occasions does not negate their presence at other times, and second, the cited records reveal that Plaintiff did, in fact, suffer from a constitutional symptom—fatigue. *See* R. 363, 398. Indeed, "constitutional symptoms" has a specific meaning with respect to this listing, defining it as "*severe fatigue*, fever, malaise, or involuntary weight loss." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.05E (emphasis added). Therefore, it was error for the ALJ to find that Plaintiff did not meet or equal Listing 14.05 on this basis.

Nevertheless, Plaintiff has not shown that this error was harmful. Though she insists that the medical records, along with her hearing testimony, frequently document two constitutional symptoms (severe fatigue and malaise), she does not cite to any medical records to support this claim. *See* Doc. No. 18-4, at 30. True, my review of the records has found multiple references to her fatigue. *See, e.g.*, R. 258, 294, 319, 322. But the only reference to malaise appears to be her hearing testimony in direct response to her counsel's question as to whether she suffered from malaise. *See* R. 48. Beyond this, Plaintiff only makes a conclusory argument that she satisfies the final element—a *marked* limitation in daily activities and concentration, persistence and pace.[24]

---

[24] The social security regulations frequently use a five-point scale to rate the severity of various limitations. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F(2) (mental health disorders). The five points are: none, mild, moderate, marked, and extreme. *See, e.g., id.* Marked is often defined as a serious limitation in the area of functioning. *See, e.g., id.*

*See* Doc. No. 18-4, at 30. And it is not clear that she had such a limitation. Notably, there are *no* opinions in the record finding a marked limitation in any of these areas. Nor does she point to any testimony or statements in the record that establish this. *Id.* Absent this evidence, Plaintiff has not shown that the ALJ's error at step three was harmful.

Therefore, Plaintiff's third claim is denied.

## IV.    CONCLUSION

For the reasons explained above, Plaintiff Jennifer Marie R.'s request for review is **DENIED**. The ALJ's decision was ultimately supported by substantial evidence, her explanations were adequate to permit meaningful review, and she did not abuse her discretion in declining to obtain medical expert testimony. Therefore, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.**

BY THE COURT:

_s/Pamela A. Carlos_____
PAMELA A. CARLOS
U.S. Magistrate Judge